JOHN J. MCCARTHY *v.* COMMISSIONER OF CORRECTION
(14062)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BORDEN, Js.

Argued October 31, 1990—decision released February 26, 1991

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* then attorney general, for the appellant-appellee (respondent).

*John W. Watson,* assistant public defender, for the appellee-appellant (petitioner).

CALLAHAN, J. The petitioner, John J. McCarthy, an inmate of the state prison at Somers, brought a petition for a writ of habeas corpus in the judicial district of Tolland. In his petition he alleged that he was illegally confined for two reasons pertinent to this appeal. He first claimed that the respondent's method of calculating good time[1] credits on his consecutive sentences was incorrect and deprived him of good time to which he was statutorily entitled, and also deprived him of the equal protection of the law guaranteed to him by the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution. Second, he contended that the respondent improperly refused to credit him with presentence jail time[2] to which he was entitled for the period from Sep-

---

[1] " '[G]ood time' is a commutation of a sentence, affecting an inmate's parole and discharge dates, thereby serving an important rehabilitative function by allowing an inmate the opportunity to earn an earlier release for himself. See *McGinnis* v. *Royster,* 410 U.S. 263, 271, 93 S. Ct. 1055, 35 L. Ed. 2d 282 [1973]." *Holmquist* v. *Manson,* 168 Conn. 389, 394, 362 A.2d 971 (1975).

[2] "Jail time" is presentence time spent in confinement as the result of an arrest for a crime. *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975).

tember 4, 1980, to September 28, 1982. The habeas
court agreed with the petitioner as to his first claim
and granted the requested relief. The court, however,
disagreed with the petitioner's second claim.

The petitioner is currently held in the state prison
pursuant to two orders of the Superior Court. The first,
a mittimus issued by the Superior Court for the judi-
cial district of Fairfield at Bridgeport on June 26, 1981,
ordered that the petitioner be imprisoned for an
indeterminate term of not less than ten years nor more
than twenty years for several burglaries and larcenies.
He is presently serving that term. The second, a mit-
timus issued by the Superior Court for the judicial dis-
trict of Danbury on January 11, 1983, ordered that the
petitioner be imprisoned for a definite term of six years
as a result of six consecutive one year sentences for
multiple counts of burglary and larceny. The peti-
tioner's six year sentence was ordered to be served con-
secutively to his ten to twenty year sentence. All the
crimes for which the petitioner was sentenced were
committed in 1980.

I

In his first claim, the petitioner argues that he is
entitled under General Statutes § 18-7[3] to have his ten

[3] "[General Statutes] Sec. 18-7. POWERS AND DUTIES OF WARDEN. PUN-
ISHMENT AND REWARD OF INMATES. The warden shall manage the Con-
necticut Correctional Institution, Somers, subject to the direction of the
commissioner of correction, and he shall keep all the prisoners employed
in such labor as the commissioner orders, during the term of their imprison-
ment. He shall also keep a record of any punishment inflicted upon a pris-
oner, showing its cause, mode and degree, and a like record of the conduct
of each prisoner. Any prisoner sentenced to a term of imprisonment prior
to October 1, 1976, may, by good conduct and obedience to the rules of
said institution, earn a commutation or diminution of his sentence, as fol-
lows: Sixty days for each year, and pro rata for a part of a year, of a sen-
tence which is not for more than five years; and ninety days for the sixth
and each subsequent year, and pro rata for a part of a year, and, in addi-
tion thereto, five days for each month as a meritorious time service award

to twenty year sentence aggregated with his six year sentence and to have his sentences construed as one continuous term of imprisonment for the purpose of calculating his good time credits. He argues, further, that he is entitled under General Statutes § 18-7a (a)[4] to have his good time credited at the rate of fifteen days

which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. Said commutation of sentence shall apply to any prisoner transferred from the Connecticut Correctional Institution, Somers, to the John R. Manson Youth Institution, Cheshire. When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section. The commissioner may employ prisoners outside the institution walls, within the state, under the charge of some officer of the institution. He shall provide for the prisoners suitable food and clothing and suitable implements and materials for their work, and shall provide for the relief of any sick or infirm prisoner, and the cost thereof shall be paid by the state from funds appropriated and available for such purpose. The warden shall superintend the labor and conduct of the prisoners, and, when requested, shall communicate to the commissioner any information in his knowledge respecting the prison."

[4] General Statutes § 18-7a (a) provides: "GOOD CONDUCT CREDIT FOR PRISONERS. (a) Except as provided in subsections (b) and (c) any person sentenced to a term of imprisonment, on and after October 1, 1976, and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee."

per month for the sixth and each subsequent year of his aggregated sentence. If correct, the petitioner will serve his entire six year sentence receiving good time credit at the rate of fifteen days per month. The respondent, on the other hand, argues that § 18-7 has no application to the petitioner, that the petitioner received two separate and distinct sentences that must be served as such, and that the petitioner must be released or paroled from his ten to twenty year sentence before he can commence serving his six year sentence. If the respondent is correct, the petitioner, under § 18-7a (a), will receive good time credit of only ten days per month for the first five years of his six year sentence rather than the fifteen days per month to which he claims to be entitled. The habeas court determined that the provision of § 18-7 mandating the aggregation of consecutive sentences for the purpose of calculating a prisoner's good time credits was applicable to the petitioner and ordered the respondent "to construe the petitioner's 10 to 20 year sentence and his six year sentence as one continuous term for the purpose of calculating [his] good time." We agree.

The relevant portion of § 18-7 provides: "When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section." The amount of commutation or diminution of his sentence, i.e., good time credit, that a prisoner can earn by good conduct and obedience to the rules of the institution under § 18-7 is "[s]ixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year . . . ."

The legislature repealed the existing § 18-7 by the enactment of Public Acts 1976, No. 76-358, § 1. Public Act No. 76-358, § 1, then reenacted § 18-7 in its previous form except that the words "sentenced to a term of imprisonment prior to October 1, 1976," were inserted in the third sentence so that the third sentence of the present § 18-7[5] reads: "Any prisoner sentenced to a term of imprisonment *prior to October 1, 1976,* may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year and pro rata for part of a year . . . ." (Emphasis added.)

In the same session the legislature enacted Public Acts 1976, No. 76-358, § 2.[6] That section of Public Act No. 76-358 increased the amount of statutory good time credits to which a prisoner sentenced after October 1, 1976, is entitled, from the previous annual sixty and ninety day limits of § 18-7 to "ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for part of a month, for the sixth and each subsequent year of a sentence of more than five years."[7] There is no provision in § 2 of Pub-

[5] Public Acts 1976, No. 76-358, § 1, has since been codified as General Statutes § 18-7.

[6] Public Acts 1976, No. 76-358, § 2, has since been codified as General Statutes § 18-7a (a).

[7] Although General Statutes § 18-7a (a) appears to double the good time to be awarded to prisoners, that, as a practical matter, is not actually the case. It is obvious from the testimony of the then commissioner of correction, John R. Manson, before the Humane Institutions Committee of the legislature concerning Public Acts 1976, No. 76-358, that, in addition to the good time of sixty and ninety days authorized by General Statutes § 18-7, the commissioner and the warden routinely awarded prisoners sentenced to the state's prison an additional five days for each month of their sentences as a "meritorious time service award," also authorized by § 18-7.

lic Act No. 76-358 that multiple prison sentences be aggregated and construed as one continuous term for the purpose of calculating the amount of good time that a prisoner may earn.

In order to resolve the petitioner's first claim, it is necessary, therefore, to determine whether, by its repeal, revision and reenactment of § 18-7 and its enactment of § 18-7a (a), the legislature intended to exclude prisoners sentenced after October 1, 1976, from the statutory mandate of § 18-7 that consecutive sentences of imprisonment be aggregated and treated as one continuous term of imprisonment for the purpose of calculating good time credits.

As revised and reenacted by the 1976 legislature, § 18-7 manifestly limited its provision concerning the *amount* of good time an inmate of the state prison could earn to those inmates sentenced before October 1, 1976. *Frazier* v. *Manson,* 176 Conn. 638, 642–43, 410 A.2d 475 (1979).[8] All the other provisions of the previous § 18-7, however, were reenacted and left intact.

Conn. Joint Standing Committee Hearings, Humane Institutions, 1976 Sess., January 27, pp. 53–55, 65–68. Prisoners sentenced to the state prison prior to October 1, 1976, therefore, actually had 120 days deducted from their sentences for compliance with the rules of the institution for each year of the first five years of their sentences, the same amount of good time to which they are presently entitled, and 150 days for the sixth and ensuing years, which is slightly more than the amount of good time that prisoners are currently entitled to earn in the sixth and ensuing years of their sentences. See General Statutes § 18-7a (b) and (c) (reducing the fifteen days per month good time for the sixth and subsequent years of a prisoner's sentence of § 18-7a [a] to twelve days per month). The "meritorious time service award" is not available to prisoners sentenced after October 1, 1976.

[8] *Frazier* v. *Manson,* 176 Conn. 638, 642–43, 410 A.2d 475 (1979), was concerned only with whether a prisoner sentenced prior to October 1, 1976, was entitled to the *amount of good time* provided by General Statutes § 18-7a (a) or that provided by General Statutes § 18-7 for the portion of his sentence served after October 1, 1976. The opinion did not deal with the aggregation of sentences.

Those provisions that were left unchanged relate generally to the duties and prerogatives of the warden of the prison and the commissioner of correction in relation to the inmates. Included among the reenacted provisions is that which states: "When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section." General Statutes § 18-7. Whether the legislature by its reenactment of that provision of § 18-7 and its silence concerning the aggregation of sentences in § 18-7a (a) intended that the aggregation provision of § 18-7 apply to prisoners sentenced after October 1, 1976, is unclear.

Because the statutes in question are ambiguous, it is necessary that we address the statutes' legislative history and other criteria for guidance in determining the legislature's intent. *State* v. *Grullon,* 212 Conn. 195, 200, 562 A.2d 481 (1989); *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988). "The basic rule of statutory construction requires us to ascertain the intention of the law-making body . . . and to construe the statute in a manner that effectuates that intent." (Citations omitted.) *Green* v. *Warden,* 178 Conn. 634, 637–38, 425 A.2d 128 (1979); *State* v. *Grullon,* supra, 199; *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987); *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975).

The legislative history of Public Act No. 76-358 reveals that the manifest intention of the legislature in enacting it was to consolidate good time statutes and make good time equal and uniform throughout the correctional system by eliminating multiple systems of crediting good time, by increasing standard good time,

by eliminating meritorious time service awards,[9] and by repealing separate good time statutes for community correctional centers and the Cheshire correctional institution. Conn. Joint Standing Committee Hearings, Humane Institutions, 1976 Sess., January 27, pp. 53–55, 65–68; see *Frazier* v. *Manson,* supra, 651. There is nothing in the legislative history of Public Act No. 76-358 to indicate that the legislature intended to abrogate the aggregation of consecutive sentences for the purpose of calculating a prisoner's good time.[10]

The intention of the legislature as to whether multiple sentences of imprisonment should be construed as one continuous term is, moreover, manifested in other existing statutes. For example, General Statutes § 18-98b[11] requires that "[w]hen any prisoner is held under more than one conviction the several terms of

---

[9] Meritorious time service awards are to be distinguished from the outstandingly meritorious performance award under General Statutes § 18-98b, which still exists.

[10] If multiple sentences are *not* aggregated for the purpose of crediting good time, it would, in fact, defeat the legislative intent to make good time equal and uniform because prisoners with a single sentence would earn more good time than prisoners with multiple sentences of the same total length.

[11] "[General Statutes] Sec. 18-98b. OUTSTANDINGLY MERITORIOUS PERFORMANCE AWARD. In addition to any commutation or diminution of sentence or any meritorious time service award which may have been granted under section 18-7 or 18-53 any inmate committed to the custody of the commissioner of correction for a definite term, or for a term with a minimum sentence imposed, may have not more than one hundred and twenty days deducted from any one continuous term of imprisonment as an outstandingly meritorious performance award in the discretion of the commissioner of correction for exceptional personal achievement, accomplishment and other outstandingly meritorious performance, provided any serious act of misconduct or insubordination or refusal to conform to institution regulations occurring at any time during his confinement shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all, or any portion, of any time awarded under this section. When any prisoner is held under more than one conviction the several terms of imprisonment imposed thereunder shall be construed as one continuous term for purposes of determining eligibility for any outstandingly meritorious performance award authorized by this section."

imprisonment imposed thereunder shall be construed as one continuous term for purposes of determining eligibility for any outstandingly meritorious performance award . . . ." General Statutes § 53a-37[12] requires the sentencing court when it imposes multiple sentences of imprisonment on a person at the same time, or when it imposes an additional sentence on a prisoner with an undischarged term of imprisonment, to state whether the sentences are concurrent or consecutive and to state the total "effective" sentence imposed. See *Delevieleuse* v. *Manson,* 184 Conn. 434, 440, 439 A.2d 1055 (1981) (effective sentence is standard by which good time is computed). General Statutes § 53a-38 (b) (2)[13] mandates that if multiple definite sentences run consecutively, the terms of the sentences must be added to arrive at an "aggregate term" and the sentences are satisfied by the discharge of the "aggregate term."

---

[12] "[General Statutes] Sec. 53a-37. MULTIPLE SENTENCES: CONCURRENT OR CONSECUTIVE, MINIMUM TERM. When multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and to the undischarged term or terms in such manner as the court directs at the time of sentence. The court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed. When a person is sentenced for two or more counts each constituting a separate offense, the court may order that the term of imprisonment for the second and subsequent counts be for a fixed number of years each. The court in such cases shall not set any minimum term of imprisonment except under the first count, and the fixed number of years imposed for the second and subsequent counts shall be added to the maximum term imposed by the court on the first count."

[13] General Statutes § 53a-38 (b) (2) provides: "(b) A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than one definite sentence, the sentences shall be calculated as follows . . . (2) if the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term."

Furthermore, it is a well established rule of statutory construction that repeal of the provisions of a statute by implication is not favored and will not be presumed where the old and the new statutes, in this case §§ 18-7 and 18-7a (a), can peacefully coexist. *Metropolitan District* v. *Barkhamsted,* 199 Conn. 294, 307, 507 A.2d 92 (1986); *State* v. *Jenkins,* 198 Conn. 671, 679, 504 A.2d 1053 (1986); *State* v. *Carbone,* 172 Conn. 242, 256, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977); *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 404, 294 A.2d 546 (1972). If, by any fair interpretation, we can find a reasonable field of operation for both §§ 18-7 and 18-7a (a), without destroying or perverting their meaning and intent, it is our duty to reconcile them and give them concurrent effect. *Windham First Taxing District* v. *Windham,* 208 Conn. 543, 553, 546 A.2d 226 (1988); *In re Juvenile Appeal (85-BC),* 195 Conn. 344, 365, 488 A.2d 790 (1985); *State* v. *Carbone,* supra; *Waterbury Teachers Assn.* v. *Furlong,* supra. We also note that the provision of § 18-7 requiring the aggregation of multiple sentences has been a part of the general statutes governing the award of good time since 1902. See General Statutes (1902 Rev.) § 2900. "In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language." *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 667, 103 A.2d 535 (1954). If the legislature had intended by enacting § 18-7a (a) to do away with the longstanding policy of aggregation of multiple sentences, it could easily have said so. *McKinley* v. *Musshorn,* 185 Conn. 616, 623, 441 A.2d 600 (1981). "Furthermore, there is a presumption that an amendatory act does not change the existing law further than is expressly declared or necessarily implied." *Norwalk* v. *Daniele,* 143 Conn. 85, 89,

119 A.2d 732 (1955); 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 22.30.

The legislative history of Public Act No.76-358 and tenets of statutory construction, coupled with the extant statutes that indicate a legislative preference for the aggregation of sentences, lead us to conclude that the legislature did not intend by its enactment of § 18-7a (a) to exclude those sentenced after October 1, 1976, from the operation of that portion of § 18-7 requiring that multiple terms of imprisonment be construed as one continuous term for the purpose of calculating good time credits. In fact, this court in a 1981 appeal concerning a 1979 sentence, a sentence imposed well after the effective date of § 18-7a (a), appears to have recognized the continued vitality of the sentence aggregation provision of § 18-7. In *Delevieleuse* v. *Manson,* supra, 440, we quoted the aggregation provision of § 18-7 and commented, albeit in dicta, that "the legislature has chosen to make the 'effective sentence' the standard by which 'good time' is computed" and "that the legislature [by the sentence aggregation provision of § 18-7] explicitly chose to make the 'effective sentence' the benchmark for 'good time' . . . ." See also *Frazier* v. *Manson,* supra, 651.[14]

Further, it appears from a stipulation of the parties filed in the trial court in the cases of *Elliott* v. *Commissioner of Correction,* and *Boyle* v. *Commissioner of Correction,* 217 Conn. 584, 587 A.2d 124 (1991), the appeals of which were heard the same day as this appeal, that the commissioner of correction is in fact aggregating some consecutive sentences imposed after October 1, 1976, the effective date of § 18-7a (a), for

---

[14] In *Frazier* v. *Manson,* 176 Conn. 638, 651, 410 A.2d 475 (1979), we stated: "Thus, [General Statutes] §§ 18-7 and 18-7a *remain* to provide the means for determining eligibility for good time credits regardless of the type of sentence of imprisonment or institution involved." (Emphasis added.)

the purpose of awarding statutory good time credits.[15] Whether sentences imposed after that date are aggregated appears to depend to a great extent on the date the sentences were imposed, whether the sentences were definite or indeterminate, and principally whether the sentences were imposed on the same day by the same court or on different days by different courts. That interpretation of the sentencing statutes by the commissioner raises a serious question as to whether such diverse treatment of prisoners, all similarly situated in that they were sentenced after October 1, 1976, violates the equal protection clause of the United States constitution. See *Alexander* v. *Robinson,* 185 Conn. 540, 543, 441 A.2d 166 (1981); see also *Bolling* v. *Manson,* 345 F. Sup. 48, 52 (D. Conn. 1972); *Frazier* v. *Manson,* supra, 650.

Clearly, a prisoner whose consecutive sentences are aggregated to allow his second sentence to earn good time at the increased rate of fifteen days a month immediately at the conclusion of his first sentence receives greater good time credit than a prisoner, who, because his sentences are not aggregated, must commence serving his second sentence at the conclusion of his first sentence. See *Alexander* v. *Robinson,* supra, 545. We need not, however, address the petitioner's equal protection claim if the statutes in question can reasonably be construed to avoid a constitutional problem. *State* v. *Champagne,* supra, 437; *State* v. *Onofrio,* 179 Conn. 23, 37–38, 425 A.2d 560 (1979). In choosing between two statutory constructions "one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." *State* v. *Breton,* 212 Conn. 258, 269, 562 A.2d 1060 (1989); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn.

---

[15] We may take judicial notice of files of the Superior Court in the same or other cases. *State* v. *Lenihan,* 151 Conn. 552, 554, 200 A.2d 476 (1964).

692, 706, 553 A.2d 596 (1989); *State* v. *Torres,* 206 Conn. 346, 362, 538 A.2d 185 (1988); *Alexander* v. *Robinson,* supra, 548.

That search has led us to the conclusion that the provision of § 18-7 requiring that prisoners held under more than one conviction have their several terms of imprisonment construed as one continuous term for the purpose of calculating their good time credits is still viable. The petitioner is, therefore, as the habeas court concluded, entitled to the number of days of good time provided for in § 18-7a (a) and entitled to have his consecutive sentences construed as one continuous term of imprisonment as provided for in § 18-7.

## II

The petitioner next claims that he is entitled to receive presentence credit under General Statutes § 18-98[16] for jail time spent at the Bridgeport correctional center from September 4, 1980, to September 28, 1982. During that period and also prior to September 4, 1980, the petitioner was confined at the correctional center for burglaries and larcenies committed in Wilton for which he received a sentence of ten to twenty years from the Superior Court in the judicial district of Fairfield at Bridgeport.

While the petitioner was confined on the Wilton charges, a warrant issued by a judge of the Superior Court in the judicial district of Danbury charging him

---

[16] "[General Statutes] Sec. 18-98. CONFINEMENT WHERE BAIL UNOBTAINABLE; PRESENTENCE CONFINEMENT CREDIT PRIOR TO JULY 1, 1981. Any person who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned for an offense committed prior to July 1, 1981, is entitled to commutation of his sentence by the number of days which he spent in a community correctional center from the time he was denied or was unable to obtain bail to the time he was so imprisoned. The commissioner of correction shall, if such person has conformed to the rules of the institution, credit such person with the number of days to which the supervising officer of the correctional center where such person was confined while awaiting trial certifies such person was confined between the denial of bail to him or his inability to obtain bail and his imprisonment."

with burglaries and larcenies in Ridgefield was lodged as a detainer against the petitioner with the department of correction at the Bridgeport correctional center.

The warrant in the upper right hand corner of its face sheet bore the notation "Bond 25,000 W.P. ___." The warrant was not executed, however, but simply remained lodged as a detainer against the defendant at the correctional center until September 28, 1982, when the petitioner was transported to the Danbury judicial district and arraigned on the offenses charged in the warrant. At his arraignment, the court committed the petitioner to the custody of the commissioner of correction on a continuance mittimus in lieu of his posting a bond. It is undisputed that when later sentenced by the Superior Court in Danbury, the petitioner was given credit on the six year sentence that he received for the time spent in the correctional center from the date of his arraignment on September 28, 1982, until the date of his sentence on January 11, 1983. He argues, however, that he is also entitled to credit against his six year sentence from the time that the warrant issued by the Danbury Superior Court was lodged as a detainer at the correctional center on September 4, 1980, until September 28, 1982, the date of his arraignment. We disagree.

An unexecuted warrant filed as a detainer is simply notification to the institution in which a prisoner is incarcerated advising the institution that the prisoner is wanted on other charges and requesting the institution either to hold the prisoner for the notifying agency or to alert the agency when release of the prisoner is imminent. *Carchman* v. *Nash,* 473 U.S. 716, 719, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985); *Moody* v. *Daggett,* 429 U.S. 78, 80 n.2, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976); *Watkins* v. *United States,* 570 F.2d 151, 152 (6th Cir.), cert. denied, 435 U.S. 976, 98 S. Ct. 1626,

56 L. Ed. 2d 71 (1978); *State* v. *Braswell,* 194 Conn. 297, 300 n.1, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985); see *Breen* v. *Warden,* 173 Conn. 312, 314, 377 A.2d 335 (1977).

In this instance, the release of the petitioner from confinement on the Wilton charges for which he had originally been incarcerated was never imminent. The petitioner, rather, remained confined on those charges during the entire time that the Ridgefield detainer was lodged at the correctional center. The petitioner, therefore, was not confined pursuant to the Ridgefield warrant for his inability to obtain bail until the warrant was executed and the petitioner arraigned in the Danbury judicial district when he was committed because he was unable to post a bond on the Ridgefield charges. That scenario does not entitle the petitioner to presentence credit under § 18-98 from the moment the detainer was lodged. In order for the petitioner to be entitled to presentence credit toward his Danbury sentence under § 18-98, he must have been arrested and confined for his inability to obtain bail on the charges for which he was eventually sentenced in Danbury. *Breen* v. *Warden,* supra, 315–16; *Houston* v. *Warden,* 169 Conn. 247, 252–53, 363 A.2d 121 (1975). The petitioner was not so confined until September 28, 1982, the date of his arraignment in the Danbury judicial district. *Breen* v. *Warden,* supra, 316. We conclude, therefore, as did the habeas court, that the petitioner was entitled to presentence credit for jail time only from September 28, 1982, the date of his arraignment, until January 11, 1983, the date of his sentence.[17]

The judgment is affirmed.

In this opinion the other justices concurred.

[17] The fact that the warrant constituting the detainer contained a notation that the bond was to be $25,000 is of no moment. That notation would only suggest the amount of bail to be set if and when the petitioner was arrested on the warrant.