[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a petition for the issuance of an order for habeas corpus relief to rectify a purported miscalculation by the respondent of the good conduct credit that the petitioner has accrued by virtue of his incarceration. CT Page 6681
The factual history of this case is undisputed. On October 1, 1970, the petitioner was sentenced to a term of confinement of not less than ten years nor more than fifteen years for burglary. On April 27, 1971, this sentence was reduced by the Sentence Review Division to a term of not less than six years nor more than fifteen. This opinion refers to this term as the "first sentence."
On May 11, 1977, while still serving the first sentence, the petitioner received a sentence to a term of confinement of not less than fifteen years nor more than thirty years as a result of convictions for assault first degree and conspiracy. This term was concurrent to the sentence described above. This opinion refers to this sentence as the "second sentence."
On January 9, 1978, while still serving the previous terms, the petitioner received another sentence for a term of confinement of not less than ten years no more than twenty years as a result of a conviction for robbery first degree. This sentence was to be served consecutively to the previously imposed sentences. This opinion refers to this term as the "third sentence."
Connecticut General Statutes Section 18-7, which pertains to sentences imposed before October 1, 1976, and Section 18-7a(a), which pertains to sentences imposed on or after October 1, 1976, but before July 1, 1981, both contain provisions whereby an inmate receives "enhanced" good conduct credit amounting to an additional five days good conduct credit per month for every month and part thereof of his sentence which exceeds five years. This case presents the problem of determining how this "enhanced" rate applies when multiple sentences are imposed over a period of time.
The petitioner's position is that he is entitled to the enhanced rate for all of his continuous service of confinement after the first five years of his first sentence. The respondent disagrees and has calculated the petitioner's good conduct credit as if the petitioner's status reverted to that of a newly confined prisoner when he began serving his second sentence on May 11, 1977. By the respondent's method, the petitioner ceased receiving good conduct credit at the enhanced rate on that date and received credit only at the lesser "regular" rate for the first five years of the second CT Page 6682 sentence. Parenthetically, the respondent has credited the petitioner at the enhanced rate for the entire term of the third sentence.
The dispute, therefore, centers on whether the petitioner is entitled to an additional five days per month good conduct time for the service of the first five years of the second sentence. This amounts to an additional three hundred days credit, which is the product of five days per month times sixty months.
Our Supreme Court has resolved the issue of the application of the enhanced good time rate under Sections18-7 and 18-7a(a) when multiple sentences are imposed and those sentences are consecutive terms, McCarthy v. Commissioner, 217 Conn. 568 (1991). In that case a prisoner received consecutive sentences, and the respondent regarded each sentence as separate and distinct for purposes of calculating the prisoner's good time credit under Section18-7a(a), and refused to aggregate the terms. That is, the respondent set the prisoner's good time clock back to zero every time one sentence ended and the next sentence began in the chain of consecutive sentences. The habeas court disagreed with the respondent's interpretation of Section18-7a(a) and ordered the respondent to aggregate the consecutive sentences into one continuous term and recalculate the prisoner's good time credit on that basis. Our Supreme Court affirmed the habeas court and concluded that Section 18-7 required that "prisoners held under more than one conviction have their several terms of imprisonment construed as one continuous term for the purpose of calculating their good time credits. . .," Ibid., p. 581.
The respondent argues that the holding of McCarthy is distinguishable from the present petitioner's claim in that the prisoner in McCarthy was serving consecutive sentences while the petitioner's first and second sentences were concurrent sentences. The respondent bases this distinction on the difference between Connecticut General Statutes Section 53a-38 (b)(1) and Section 53a-38 (b)(2). The former subsection indicates that concurrent sentences "merge in and are satisfied by discharge of the term which has the longest term to run," as opposed to the latter subsection which indicates that for consecutive sentences "the terms are added to arrive at an aggregate term and are satisfied by discharge CT Page 6683 of such aggregate term." The respondent contends that, because Section 53a-38 (b)(1) merged the petitioner's first sentence into the second sentence, his good time credit status reverted to that of a prisoner just commencing confinement on the date the second sentence was imposed.
The petitioner asserts that Sections 18-7 and 18-7a(a) do not differentiate between the class of prisoners serving multiple consecutive sentences and the class serving multiple concurrent sentences or any combination thereof. The petitioner also contends that the respondent's method of calculation violates the petitioner's right to equal protection of the law under the federal and state constitutions. Because the court agrees with the petitioner that the aggregation rule of Sections 18-7 and 18-7a(a), as interpreted by the McCarthy case, applies with equal force to concurrent as well as consecutive multiple sentences, the court need not address the equal protection issue, Ibid., p. 580.
The pertinent language of Section 18-7 is as follows:
 "When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section."
Absent from this language is any discrimination between concurrent and consecutive terms. The respondent argues that the phrase "held under more than one conviction" must be read in conjunction with and as limited by Section 53a-38 (b)(1), which merges concurrent terms into the one term with the longest time yet to be served. Under the respondent's logic, the petitioner's first sentence merged into his concurrent, but longer, second sentence, by virtue of Section53a-38 (b)(1), and, therefore, he was only being "held" on that second sentence, and the aggregation language of Section18-7 is inapplicable. Because the enhanced rate of Section18-7a(a) only applies as to that portion of the second sentence beyond five years, the petitioner is only entitled to good time credit at the regular rate even though he had already been serving time continuously for more than six and one-half years on the first sentence before receiving the CT Page 6684 second sentence.
This interpretation strains the language of Section18-7, is inconsistent with existing case law, and yields bizarre results.
If the legislature intended that the phrase "several terms of imprisonment" of Section 18-7 meant only consecutive terms it would have stated so explicitly. Out statutes have recognized the difference between consecutive and concurrent sentences for at least a century, see e.g. General Statutes (Rev. 1888), Section 1496. The absence of the word "consecutive" modifying "more than one conviction" and "several terms" in Section 18-7 demonstrates that the aggregation provision of Section 18-7 was meant to apply to all manner of multiple sentences.
If Section 53a-38 (b) had the impact on good time credit the respondent proposes, the aggregation language of Section18-7 would be superfluous. This is so because Section53a-38 (b)(2) itself aggregates consecutive sentences into one continuous term. If Section 18-7 is limited to consecutive sentences then its existence is unnecessary because Section53a-38 (b)(2) already orders such aggregation. It should be noted that Section 53a-38 (b) was enacted in 1969 as part of the adoption of the Model Penal Code. Section 18-7, however, goes back to 1902, Ibid, p. 578. It is difficult to imagine that the legislature, in enacting Section 53a-38 (b) sixty-seven years afterwards, intended to limit the language of Section 18-7 sub silentio.
In addition, case law has restricted the scope of the merger provision of Section 53a-38 (b)(1). In State v. Clemons, 168 Conn. 398 (1975), a defendant attempted to use a merger argument regarding previous concurrent sentences to thwart an allegation that he was a persistent offender. He contended that because he had received concurrent sentences for the convictions which were the predicate cases for the persistent offender charge those earlier convictions merged into one conviction. Our Supreme Court, at p. 408, rejected this argument stating that the concurrent sentences constituted "separate judgments upon each of which the defendant was required to serve a set period of imprisonment," (emphasis added). The Court noted that if, for reasons of pardon or modification, the later sentence was reduced or CT Page 6685 discharged, the prisoner would still be required to serve out the first sentence despite the merger. Finally, the Court noted "[t]he imposition of a concurrent sentence is not an empty act. . . . Rather, . . . [the sentences] remain. . . separate terms of imprisonment which the legislature has permitted to be served at one time," Ibid., p. 409.
The court holds that the effect of Section 53a-38 (b)(1) is merely to merge the service of concurrent terms and not to cause the longest term to swallow up shorter ones for all purposes. Because concurrent sentences remain separate terms of imprisonment, despite being served simultaneously, the petitioner is being "held under more than one conviction" for purposes of Section 18-7 and Section 18-7a(a).
To adopt the respondent's method would cause bizarre results. For example, if a prisoner received two consecutive, five year sentences, under McCarthy he would be entitled to receive good time credit at the enhanced rate for his entire second, five year term. If instead, however, he received a five year sentence and another five year sentence concurrent, but imposed on the day before he was discharged on his first sentence, under the respondent's calculations he would never receive enhanced good time credit, even though the total effective sentence in the second example was one day less than that in the first, viz. ten years less one day. As is evident from these examples, using the respondent's approach, a prisoner could receive a series of concurrent sentences, all less than five years, but imposed on different dates, and end up serving any number of years in continuous confinement without ever receiving good time credit at the enhanced rate, as long as the controlling sentence at each merger never exceeded five years.
Similarly, if a prisoner had already received good conduct credit at the enhanced rate for an earlier sentence, he would revert back to the regular rate if a later sentence extends his earlier release date, even though he serves the sentences continuously. This is precisely the petitioner's situation.
For the above reasons, the court holds that the respondent must aggregate all sentences that a prisoner serves continuously whether concurrent or consecutive for purposes of determining enhanced good time under Section 18-7
CT Page 6686 and Section 18-7a(a). Therefore, the petition requesting habeas relief is granted, and the respondent is ordered to credit the petitioner with three hundred days additional good conduct credit.
BY THE COURT,
Samuel J. Sferrazza Judge, Superior Court