## JOSEPH WILSON *v.* WARDEN, STATE PRISON (12740)

LAVERY, FREEDMAN and SPEAR, Js.

Argued February 24—decision released May 24, 1994

*Madeline A. Melchionne,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (respondent).

*Paula Mangini Montonye,* assistant public defender, for the appellee (petitioner).

LAVERY, J. The respondent state prison warden appeals from the trial court's judgment granting a writ of habeas corpus to the petitioner, Joseph Wilson. The trial court ruled that the respondent had incorrectly calculated good time[1] credit by failing to aggregate con-

[1] " ' "[Good] time" is a commutation of a sentence, affecting an inmate's parole and discharge dates, thereby serving an important rehabilitative func-

current sentences. On appeal, the respondent asserts that concurrent sentences should not be aggregated for the purpose of calculating good time credit and, therefore, the trial court improperly awarded the petitioner additional good time credit. We affirm the decision of the trial court.

The facts of this case are undisputed. The petitioner was convicted of burglary in 1970 and sentenced to serve not less than six nor more than fifteen years in prison. Seven years later, while still serving this first sentence,[2] the petitioner was convicted of first degree assault and conspiracy for which he received a sentence of fifteen to thirty years. In 1978, while serving the first two sentences, the petitioner was convicted of first degree robbery and sentenced to be incarcerated for ten to twenty years. The first two sentences were concurrent; the third sentence was consecutive.

Connecticut inmates serving sentences imposed prior to October 1, 1976, receive statutory good time credit that shortens their sentences by five days for each month of the sentence. General Statutes § 18-7.[3]

tion by allowing an inmate the opportunity to earn an earlier release for himself. See *McGinnis* v. *Royster,* 410 U.S. 263, 271, 93 S. Ct. 1055, 35 L. Ed. 2d 282 [1973].' *Holmquist* v. *Manson,* 168 Conn. 389, 394, 362 A.2d 971 (1975)." *McCarthy* v. *Commissioner of Correction,* 217 Conn. 568, 569 n.1, 587 A.2d 116 (1991).

[2] The petitioner had been paroled on March 27, 1975, and July 28, 1976. Both times he violated the terms of his parole within five months and was returned to custody.

[3] General Statutes § 18-7 provides in pertinent part: "Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any

Inmates also receive enhanced good conduct credit of two and one-half additional days per month that the sentence exceeds five years. General Statutes § 18-7. Inmates serving sentences imposed after October 1, 1976, receive statutory good time credit of ten days for each month of their sentences. General Statutes § 18-7a (a).[4] They also receive enhanced good time credit of five additional days for every month that the sentence exceeds five years.[5] General Statutes § 18-7a (a).

The respondent awarded the petitioner enhanced good conduct credit from the five year anniversary of his first sentence until he commenced serving his concurrent second sentence. At that time, the respondent treated the petitioner as a newly confined prisoner and awarded him only standard good conduct credit.[6] The

time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. . . . When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section. . . ."

[4] General Statutes § 18-7a (a) provides: "Except as provided in subsections (b) and (c) any person sentenced to a term of imprisonment, on and after October 1, 1976, and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee."

[5] Inmates imprisoned for offenses committed on or after July 1, 1981, receive different good time credit. See General Statutes § 18-7a (b) and (c).

[6] Because the petitioner's concurrent second sentence was imposed after October 1, 1976, the standard good time credit was ten days per month.

respondent based this calculation on the theory that concurrent sentences are not aggregated like consecutive sentences. See *McCarthy* v. *Commissioner of Correction,* 217 Conn. 568, 581, 587 A.2d 116 (1991) (holding that consecutive sentences must be aggregated). Thus, when the petitioner began serving his second sentence, he had not yet served five years on that sentence and had not yet earned the right to any enhanced good conduct credit.

The petitioner argues that concurrent sentences should not be treated differently from consecutive sentences. Under his theory, because he had served five years, he was entitled to enhanced good time credit for the remainder of his incarceration. He seeks to have this court affirm the trial court's award of 300 additional days of good conduct credit.[7]

General Statutes § 18-7 provides in pertinent part that *"[w]hen any prisoner is held under more than one conviction,* the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section.'' (Emphasis added.) The respondent argues that this provision applies solely to consecutive sentences. We conclude, however, that this language requires that concurrent sentences be construed as one term.

First, the plain language of the statute makes clear that it is intended to control all prisoners serving more than one conviction. It does not distinguish between concurrent and consecutive sentences. The distinction between concurrent and consecutive sentences has existed for more than a century. See General Statutes

---

[7] The period in dispute lasted sixty months. Thus, the 300 day award resulted from multiplication of five days per month by sixty months.

(1888 Rev.) § 1496. Had the legislature intended to limit the language of § 18-7 to consecutive sentences, it could have done so.

Second, our Supreme Court's recent treatment of this language demonstrates that § 18-7 requires aggregation. In *McCarthy* v. *Commissioner of Correction*, supra, 217 Conn. 570–81, the court determined that sentences imposed under § 18-7a should be aggregated in accordance with the language of § 18-7 even though § 18-7a lacks the aggregation language. The court never addressed *whether* consecutive sentences imposed under § 18-7 should be aggregated; it accepted as a given that § 18-7 required aggregation. See id., 574.

Third, *McCarthy* did not limit the aggregation language of § 18-7 to consecutive sentences alone. The court considered the aggregation issue in the context of consecutive sentences because that was the nature of the multiple sentences the appellant was serving. Id., 570. Thus, the court's ruling that § 18-7 requires aggregation of consecutive sentences imposed under § 18-7a cannot be read to imply that *only* consecutive sentences are to be aggregated.

Fourth, other existing statutes manifest the legislature's intent that all multiple sentences be construed as one continuous term. Id., 576. "For example, General Statutes § 18-98b requires that '[w]hen any prisoner is held under more than one conviction the several terms of imprisonment imposed thereunder shall be construed as one continuous term for purposes of determining eligibility for any outstandingly meritorious performance award . . . .' " Id., 576–77. General Statutes § 53a-37 essentially requires a sentencing court to aggregate both consecutive and concurrent sentences by requiring the court to state the total "effective" sentence imposed.

Fifth, the respondent argues that General Statutes § 53a-38 (b) (1) demonstrates that the aggregation language of General Statutes § 18-7 does not apply to concurrent sentences. Section 53a-38 (b) (1) provides that concurrent sentences "merge in and are satisfied by discharge of the term which has the longest term to run." Section 53a-38 (b) (2) provides, however, that consecutive sentences aggregate. The respondent contrasts the merging of concurrent sentences with the aggregation of consecutive sentences and concludes that § 53a-38 (b) restricts aggregation to consecutive sentences.

The respondent obviously interprets "merge" to mean replace.[8] Thus, an inmate serving a subsequent concurrent term is treated as if he had never served any prior sentence; the earlier term becomes irrelevant. Our Supreme Court, however, has twice rejected such an interpretation. See *Payton* v. *Albert,* 209 Conn. 23, 32, 547 A.2d 1 (1988) (suggesting that multiple merged terms coexist but are intermingled and satisfied by discharge of the longer); *State* v. *Clemons,* 168 Conn. 395, 409, 363 A.2d 33, cert. denied, 423 U.S. 855, 96 S. Ct. 104, 46 L. Ed. 2d 80 (1975) (rejecting argument that subsequent concurrent sentences replace earlier sentences). Concurrent sentences remain "separate terms of imprisonment which the legislature has permitted to be served at one time." *State* v. *Clemons,* supra, 409.

Sixth, the respondent further contrasts the merging of concurrent sentences with the aggregation of consecutive sentences and concludes that § 53a-38 (b) limits the broad language of § 18-7 to consecutive sentences. We do not agree. The respondent's conclusion would render § 18-7 superfluous: consecutive sentences would

---

[8] Such an interpretation explains why the respondent treated the petitioner as a first year inmate when he began serving his second concurrent sentence. The respondent believed that the second concurrent sentence replaced the first sentence and became the sole sentence that he was serving.

be aggregated under § 53a-38 (b) (2) making § 18-7 unnecessary. Statutes should not be construed so that words, phrases or clauses are rendered meaningless. *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982).

Seventh, the respondent's interpretation of § 18-7 would yield bizarre results. For example, a five year sentence followed by a five year concurrent sentence imposed on the last day of the prior term would result in an inmate's serving ten years in jail without receiving enhanced good time credit. Conversely, the same inmate sentenced to two, five year consecutive sentences would receive enhanced good time credit. Statutes should be construed to avoid absurd consequences and bizarre results. *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 667, 560 A.2d 975 (1989).

In sum, the plain language of § 18-7 requires that all multiple sentences be aggregated for purposes of calculating good time credit. We must now apply this conclusion to this case: the petitioner's two concurrent terms are to be considered one continuous term of imprisonment. Thus, he earned enhanced good time credit from the date of the five year anniversary of his first conviction. The remaining question is at what rate should the enhanced good time credit be calculated?

If § 18-7 applies, the petitioner should have received seven and one-half days per month. If, however, § 18-7a applies, the trial court properly awarded fifteen days per month. The petitioner meets the requirements for application of both statutes. Application of § 18-7 alone would violate the provisions of § 18-7a because an inmate, as here, sentenced after October 1, 1976, and before July 1, 1981, would not be granted fifteen days per month. Conversely, application of § 18-7a alone would satisfy both statutes: the fifteen days per month would include the seven and one-half days required by

§ 18-7. Therefore, we conclude that the trial court correctly awarded the petitioner enhanced good time under § 18-7a.

The judgment is affirmed.

In this opinion the other judges concurred.