STATE OF CONNECTICUT *v.* EDWARD F. JOHNSON
(14629)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued April 30—decision released August 31, 1993

*Mario Paul Mikolitch,* special public defender, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, *Mitchell S. Brody,* assistant state's attorney, and *Russell P. Zentner,* deputy assistant state's attorney, for the appellee (state).

NORCOTT, J. After a jury trial, the defendant, Edward F. Johnson, was convicted of operating a motor vehicle while under the influence in violation of General Statutes § 14-227a (a) (1),[1] and evasion of responsibility in operating a motor vehicle in violation of General Statutes § 14-224 (b).[2] The defendant was

---

[1] General Statutes § 14-227a (a) provides: "OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[2] General Statutes § 14-224 (b) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes physical

sentenced to a total effective term of imprisonment of eight months and was fined $1100 plus fees and costs. The defendant appealed from the judgment of conviction to the Appellate Court, which affirmed the conviction. *State* v. *Johnson,* 28 Conn. App. 708, 613 A.2d 1334 (1992). We granted certification to appeal limited to two issues: "(1) Was the Appellate Court correct in refusing to review the defendant's claim that the trial court improperly denied his motion to dismiss which claimed that a peace officer does not have probable cause to effectuate a warrantless arrest for a misdemeanor committed outside the presence of that officer? [and] (2) In order to establish a violation of General Statutes § 14-224 (b), must the state prove that the defendant knew that the accident in which he was involved caused 'injury or damage to property?' " *State* v. *Johnson,* 224 Conn. 911, 617 A.2d 168 (1992). We affirm the judgment of the Appellate Court.

The facts in this case are adequately set forth in the opinion of the Appellate Court. "On April 23, 1990, Catherine Mangels was driving her car on Route 1 in Westbrook when it was struck by a car driven by the

injury, as defined in section 53a-3, to any other person or injury or damage to property shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to the owner of the injured or damaged property, or to any officer or witness to the physical injury to person or injury or damage to property, and if such operator of the motor vehicle causing the physical injury of any person or injury or damage to any property is unable to give his name, address and operator's license number and registration number to the person injured or the owner of the property injured or damaged, or to any witness or officer, for any reason or cause, such operator shall immediately report such physical injury of any person or injury or damage to property to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the physical injury of any person or the injury or damage to property and his name, address, operator's license number and registration number."

defendant. As a result of the collision, the cars became hooked together. Robert Pandora, who had been driving behind Mangels and had witnessed the collision, helped unhook the two cars. Pandora then drove Mangels' car into the parking lot of a nearby restaurant.

"The defendant drove his car to the back of the restaurant lot. Pandora got out of Mangels' car, went to where the defendant had driven, and told him that a bystander had called the police. The defendant responded that he would not wait for the police, and then tried to leave the restaurant lot. The defendant was having trouble getting his car into gear, so Pandora reached into the defendant's car, turned off the ignition and removed the keys. Pandora went into the restaurant with the keys, and the defendant followed him in an unsuccessful attempt to retrieve his keys. When the police arrived, Pandora was walking out of the front door of the restaurant with the defendant behind him. The defendant, upon seeing the police, retreated into the restaurant bathroom and locked himself in a bathroom stall.

"Pandora led Trooper Michael Polansky of the state police to the bathroom the defendant had just entered. Polansky identified himself and asked the defendant to come out of the stall. After refusing several times, the defendant finally staggered out. The defendant smelled of alcohol, had bloodshot eyes and was slurring his speech. Pandora identified the defendant as the operator of one of the cars involved in the collision. Polansky asked the defendant if he had been involved in the collision and the defendant replied that he had not. Polansky then asked the defendant to take a number of field sobriety tests. After the defendant refused to take the requested tests, Polansky arrested him without a warrant.

"On the way out of the restaurant, the defendant acknowledged that he was the owner of one of the cars that had been involved in the collision. At the police station, Polansky asked the defendant to take a breathalyzer test. He refused. The jury subsequently convicted the defendant of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both, and of evading responsibility." *State* v. *Johnson,* supra, 28 Conn. App. 709–11.

## I

Prior to trial, the defendant filed a motion to dismiss the information against him on the ground that there was no probable cause for his arrest because the arresting officer had not been an eyewitness to the misdemeanor with which the defendant was charged. After an evidentiary hearing, the trial court denied the defendant's motion. The defendant later filed a motion for articulation of the trial court's decision. In its articulation, the trial court stated that there had been probable cause to arrest the defendant for driving under the influence and evading responsibility and rejected the defendant's claim that a police officer must be an eyewitness before he can arrest a misdemeanant.

On appeal to the Appellate Court, the defendant claimed that the trial court had improperly denied his motion to dismiss. The defendant argued that General Statutes § 54-1f (a),[3] which governs warrantless mis-

[3] General Statutes § 54-1f (a) provides: "For purposes of this section, the respective precinct or jurisdiction of a deputy sheriff or a special deputy sheriff shall be wherever he is required to perform his duties. Peace officers, as defined in subdivision (9) of section 53a-3, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others, provided that no constable elected pursuant to the provisions of section 9-200 shall be considered a peace officer for the purposes of this subsection, unless the

demeanor arrests and permits a warrantless arrest to be made "on the speedy information of others," expands the common law rule that a peace officer cannot arrest a person for a misdemeanor committed outside of his presence. The defendant claimed that this expansion of the common law violated the fourth amendment to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution,[4] and therefore that the arrest was illegal and required dismissal of the charges against him. The Appellate Court concluded, however, that the defendant had failed to provide any analysis of either the federal or state constitutional claims, and the court, therefore, refused to address them.

The defendant argues that the Appellate Court improperly declined review of his constitutional claim on the basis of inadequate briefing. Even assuming, without deciding, that the Appellate Court improperly refused to review this claim, we conclude that the underlying law is so clear that there is no basis for the defendant to prevail on this argument. The defendant argued in the Appellate Court that, by virtue of the illegal arrest, the trial court should have granted his motion to dismiss. Under both federal and state constitutional law, however, an illegal arrest does not operate as a per se jurisdictional barrier to a defendant's subsequent prosecution. See *State* v. *Fleming,* 198 Conn. 255, 259–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), and cases cited therein. In *Fleming,* we held that "[w]here the fairness of a subsequent prosecution has not been impaired by an illegal arrest, neither the federal nor the Connecticut constitution requires dismissal of the

town in which such constable holds office provides, by ordinance, that constables shall be considered peace officers for the purposes of this subsection."

[4] The defendant's brief in the Appellate Court stated that this statutory enlargement of the common law "may raise constitutional issues."

charges or a voiding of the resulting conviction.''[5] Id., 263; see also *State* v. *McPhail,* 213 Conn. 161, 169–70, 567 A.2d 812 (1989).

In the present case, there is no indication that the allegedly illegal arrest tainted the defendant's trial. The defendant does not claim that evidence was seized as a result of the arrest and was later used to obtain a conviction. Indeed, the defendant maintains that his claim involves only his motion to dismiss, and acknowledges that he never moved for the suppression of evidence introduced at trial. On this record, there would be no basis for the defendant to prevail on his argument that the trial court improperly denied his motion to dismiss.[6] The issue of whether the Appellate Court improperly declined to reach this claim is, therefore, academic.

## II

At trial, the trial court instructed the jury regarding the charge of evasion of responsibility in operating a motor vehicle as follows: "The state must prove both, that there was an accident that caused damage

---

[5] Central to this holding was the premise that " '[d]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards.' " *State* v. *Fleming,* 198 Conn. 255, 263, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 342 (1986), quoting *Frisbie* v. *Collins,* 342 U.S. 519, 522, 72 S. Ct. 509, 96 L. Ed. 2d 541 (1952). This conclusion is in accord with the rule in the federal courts; see *United States* v. *Crews,* 445 U.S. 463, 474, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); *Gerstein* v. *Pugh,* 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); and with a host of other state court jurisdictions. See *State* v. *Fleming,* supra, 262–63 n.7, for a listing of state courts that have followed the federal rule.

[6] We note that the trial court recognized that the defendant would have had difficulty overcoming the holding of *State* v. *Fleming,* 198 Conn. 255, 259–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), and that the case would bar dismissal of the information. The trial court, however, made no mention of *Fleming* when the defendant requested articulation of the basis of the denial of his motion to dismiss.

to another's property, and that the defendant knew of such accident. It is only necessary that the defendant knew that he was involved in an accident. Knowledge by the defendant that the collision caused damage to property of another is unnecessary."

The defendant claimed in the Appellate Court that the trial court had improperly instructed the jury that it was not necessary that the defendant knew that the accident had caused damage to property. The defendant contended that, under the provisions of § 14-224 (b), the state must prove that the defendant had knowledge, not only of the accident, but also of any resulting property damage. The Appellate Court rejected this argument on the ground that the defendant's interpretation of the statute would thwart its purpose. It held that the "only knowledge required is knowledge that there has been an accident." *State* v. *Johnson,* supra, 28 Conn. App. 717.

Section 14-224 (b) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes physical injury . . . to any other person or injury or damage to property shall at once stop and render such assistance as may be needed . . . ." In this court, the defendant reiterates his argument that § 14-224 (b) unambiguously requires an individual charged with evading responsibility to have knowledge of the accident *and* of the damage caused by the accident. Therefore, he argues, the Appellate Court improperly construed the statute to require only knowledge of the accident, and not knowledge of the damage as well. We disagree.

"It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. *Green* v. *Ward,* 178 Conn. 634, 637–38, 425 A.2d 128 (1979); *Sillman* v. *Sillman,* 168 Conn. 144,

147, 358 A.2d 150 (1975); 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 45.05." *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 194, 567 A.2d 1156 (1989). Where the language of a statute is clear and unambiguous, reference to its history and purpose is unnecessary. *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 538, 582 A.2d 1174 (1990). It is the duty of the court to "interpret statutes as they are written"; *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980); and not " 'by construction read into statutes provisions which are not clearly stated.' " *Glastonbury Co.* v. *Gillies,* 209 Conn. 175, 179, 550 A.2d 8 (1988).

If the statutory language is unclear, the intent of the legislature may be ascertained by looking to the legislative history and to the purpose that the statute was intended to serve. *Vaillancourt* v. *New Britain Machine/Litton,* 224 Conn. 382, 391, 618 A.2d 1340 (1993). " 'In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result.' " *King* v. *Board of Education,* 203 Conn. 324, 332–33, 524 A.2d 1131 (1987). A statute, of course, is not to be interpreted to thwart its purpose. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 489, 400 A.2d 726 (1978).

Although arguing that the plain language of the statute is clear and that no construction is therefore required, the defendant has himself pointed to an ambiguity in § 14-224 (b) by raising the issue of whether the statute requires knowledge of both an accident and resulting damage before an individual can be found guilty of evading responsibility. A review of the history and the purpose of this statute, however, supports the construction given to it by the Appellate Court and defeats the defendant's argument.

Prior to 1957, § 14-224 (b) read in pertinent part as follows: "Each person operating a motor vehicle who knowingly causes . . . injury or damage to property shall at once stop" and render assistance. General Statutes (1949 Rev.) § 2410. In 1957, our legislature changed that language to provide that "[e]ach person operating a motor vehicle who is knowingly involved in an accident which causes . . . injury or damage to property shall at once stop" and render assistance. General Statutes (1958 Rev.) § 14-224 (a). When the legislature amends the language of a statute, it is presumed that it intended to change the meaning of the statute and to accomplish some purpose. *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 377, 538 A.2d 202 (1988); *Heffernan* v. *Slapin*, 182 Conn. 40, 49, 438 A.2d 1 (1980).

Although the legislative history behind this amendment is silent as to the impetus for the change, a commonsense reading of the amendment indicates an intent that a person may be found guilty of evading responsibility if that person is knowingly involved in an accident, regardless of that person's knowledge of injury or damage.[7] We are persuaded, therefore, that this change in statutory language captured the legislative intent that § 14-224 (b) be a mandatory "stop, ascertain and assist" statute, which provides criminal penalties for the failure to do so. We conclude, therefore,

[7] Although we are not bound by the decisions of lower Connecticut courts, we note that, shortly after the amendment to General Statutes § 14-224, every Connecticut Circuit Court decision but one concluded that the controlling element of § 14-224 is knowing involvement in an accident and that, as a result, it is the obligation of the driver to stop and ascertain whether there has been any resulting injury or damage. See *State* v. *Herbst*, 2 Conn. Cir. Ct. 236, 238, 197 A.2d 550 (1963); *State* v. *Fournier*, 2 Conn. Cir. Ct. 588, 592, 203 A.2d 245 (1964); *State* v. *Mulvey*, 3 Conn. Cir. Ct. 297, 304–305, 213 A.2d 228 (1965); compare *State* v. *Richardson*, 1 Conn. Cir. Ct. 199, 201–202, 181 A.2d 609 (1962).

that the Appellate Court properly construed liability under § 14-224 (b) so as to require knowledge of the accident alone.

This interpretation is consistent not only with its legislative history but also with the purposes of statutes on evading responsibility. The purpose of the statute on evading responsibility is to ensure that when the driver of a motor vehicle is involved in an accident, he or she will promptly stop, render any necessary assistance and identify himself or herself. The essence of the offense of evading responsibility is the failure of the driver to stop and render aid. See 15 D. Blashfield, Automobile Law and Practice (3d Ed.) § 490.92, p. 437. Knowledge of the precise nature of the injury or damage serves no useful function in the fulfillment of the principal purpose of the statute. We agree with the reasoning of the Illinois Supreme Court in *People* v. *Nunn,* 77 Ill. 2d 243, 252, 396 N.E.2d 27 (1979), in which it stated, in interpreting its statute on evading responsibility, "[w]e do not . . . hold that it is necessary for the prosecution to show also that the accused knew that injury or death resulted from the collision. To require this additional proof would impose a burden that would be unreasonably difficult to sustain and would tend to defeat the public interest which is served by requiring persons involved in vehicle collisions to stop and provide identification and other personal information and to be available to render assistance if required."[8]

Our legislature, by its amendment of § 14-224 (b), has eliminated the requirement of knowledge of injury or

---

[8] The Illinois statute on evading responsibility, Ill. Rev. Stat., c. 95 1/2, para. 11-401 (a), provides: "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at, the scene of the accident until he has fulfilled the requirements of Section 11-403. . . ."

property damage, and to construe the statute otherwise would read into the statute a provision that was not intended. See *Glastonbury Co.* v. *Gillies,* supra, 179. We conclude, therefore, that, to establish a violation of § 14-224 (b), the state is not required to prove that the defendant knew that the accident in which he was involved caused injury or damage to property. The Appellate Court correctly affirmed the trial court's instructions on the elements of this offense.

The judgment is affirmed.

In this opinion the other justices concurred.