[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ARTICULATION
The following constitutes this court's articulation of its June 27, 1994 decision entering judgment in favor of the plaintiff. This Articulation is filed in response to the defendant's June 30, 1994 Motion for Articulation.
The plaintiff is the owner of a rooming house located in Hartford. He and the defendant entered into an oral month to month lease at the agreed upon rent of $345 per month. The plaintiff seeks to evict the defendant for nonpayment of rent. In his special defense the defendant asserts that the plaintiff cannot evict him for nonpayment of rent because the plaintiff failed to obtain a certificate of apartment occupancy (CAO) for the defendant's room.
Pursuant to Hartford Municipal Code § 18-2 and General Statutes § 47a-57 apartments in any structure containing three or more housing units are subject to certificates of occupancy. An owner who has failed to obtain a certificate of occupancy is barred from evicting a tenant for nonpayment of rent. General Statutes § 47a-7; Conaway v. Prestia, 191 Conn. 484 (1983). Because his property is a rooming house the plaintiff has been advised by the City of Hartford Office of License and Inspections that it is not CT Page 8753 subject to inspection for a certificate of occupancy. Instead he has annually applied for and received a rooming house license issued pursuant to Hartford Municipal Code § 18-162 et seq.
According to Joseph Zibidio, the Director of License and Inspections, the inspection for a rooming house license is as comprehensive and thorough as an inspection for a certificate of apartment occupancy. The purpose of both inspections is to establish that the respective premises are in compliance with state and federal fire, safety and health codes. The significant difference between an inspection for a rooming house license and for a CAO concerns the frequency of required inspections. General Statutes § 47a-57 and Municipal Code § 18-2 require, with certain exceptions, that an apartment be inspected for and receive a certificate of occupancy prior to each new tenant taking occupancy. Hartford Municipal Code § 18-168 requires that a rooming house be inspected every two years.
In this case the defendant alleges that the plaintiff is required to obtain a certificate of occupancy pursuant to General Statutes § 47a-57, notwithstanding that the Hartford Municipal Code does not require a rooming house operator to obtain one. Defendant's argument is based on the language of General Statutes § 47a-57 which provides:
 An apartment or dwelling unit in any structure containing three or more housing units in any municipality which adopts the provisions of this section by vote of its legislative body shall not be occupied for human habitation, after a vacancy, until a certificate of occupancy has been issued by the person designated by the legislative body of such municipality to administer the provisions of this section, certifying that such apartment or dwelling unit conforms to the requirements of the applicable housing ordinances of such municipality and this chapter.
By its terms § 47a-57 requires that a certificate of occupancy be obtained for an "apartment or dwelling unit . . . in any structure containing three or more housing units" (emphasis supplied). § 47a-50(3) defines a dwelling unit or an apartment as "any house or building, or portion thereof, which is rented, leased or hired out to be occupied, or is occupied as a home or residence of one or more persons." CT Page 8754
The defendant argues that his room is a dwelling unit within the definition of § 47a-50(3) in that it is "rented, leased or hired out . . . as a home or residence." It follows, therefore, according to his interpretation, that § 47a-57 requires the plaintiff to obtain a certificate of occupancy for the room.
Certain well established rules of statutory construction guide this court's analysis. "Our principle objective is to ascertain the apparent intent of the legislature. We first look for that intent in the apparent meaning of the statutory language. Where the wording is plain courts will not speculate as to any supposed intention. If there is no ambiguity in the language of the statute, it does not become ambiguous merely because the parties contend for different meanings.
"When the language is unclear, however, the court must ascertain the statute's meaning. When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; the legislative history and circumstances surrounding the enactment of the statute and the purpose the statute is to serve. A statute should be interpreted according to the policy which the legislation seeks to serve." Chrysler Corporation v. Maiocco, 209 Conn. 579, 591-92
(internal quotations and citations omitted).
It is useful to note at the outset that the Hartford Municipal Code explicitly distinguishes between a rooming house and other dwelling units such as an apartment.[1] Specifically, Hartford Municipal Code § 18-1 defines dwelling unit as "any room or group of rooms located within a dwelling and forming a single habitable unit with facilities which are used, arranged or designed to be occupied for living, sleeping, cooking and eating." A rooming unit "means any room or group of rooms . . . intended to be used for living and sleeping, but for no cooking or eating purposes. . ." As previously noted, § 18-162 requires that a rooming house operator obtain a license, but not a certificate of occupancy. Although the defendant acknowledges that the Hartford Municipal Code as written and as interpreted by the Department of License and Inspections does not require that the plaintiff obtain a certificate of occupancy he argues that state law is supreme and that in any conflict between state and local law, the state enactment triumphs.
§ 47a-57 requires that the owner of an "apartment or dwelling unit in any structure containing three or more housing units" obtain a certificate or occupancy after each vacancy. The CT Page 8755 threshold issue for consideration is the meaning of "three or more housing units." If the individual rooms within a rooming house are not considered "housing units", § 47a-57 does not apply to plaintiff's building such that a CAO is not required.
Neither § 47a-57 nor § 47a-50 define the phrase "housing units." Under accepted canons of construction the words of a statute are to be given their ordinary and customary meaning." General Statutes § 1-1. In this case the customary meaning of the word "house" is not helpful in resolving this inquiry. Black's Law Dictionary
defines "house" as a "structure that serves as a living quarters for one or more persons or families." Funk and Wagnalls NewStandard Dictionary defines house as a "place of abode or shelter." Either definition arguably encompasses an individual room within a rooming house. It is thus impossible to resolve defendant's claim simply by reference to the phrase "housing units."
The next question, therefore, is whether defendant's individual room constitutes a dwelling unit or apartment. As previously noted, § 47a-50(3) defines dwelling unit or apartment as "any house or building, or portion thereof, which is rented, leased or hired out to be occupied, or is occupied as a home or residence of one or more persons." This definition, too, is certainly susceptible of defendant's interpretation, namely, that a room is a portion of a house occupied as a home or residence. At the same time because the defendant's room does not contain a kitchen or bath, it arguably does not, by itself, constitute a "home or residence."
Because the meaning of "dwelling unit or apartment" is ambiguous, "the intent of the legislature may be ascertained by looking to the legislative history and to the purpose that the statute was intended to serve. `In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result.' A statute, of course, is not to be interpreted to thwart its purpose." State v. Johnson, 227 Conn. 534, 542 (1993).
While the legislative history of § 47a-57 and its subsequent amendments; 1969 P.A. 462; 1971 P.A. 713; P.A. 76-434; P.A. 77-495; P.A. 78-280; P.A. 79-571; does not specifically address the meaning of apartment or dwelling unit, it is clear from the legislative debate that the law was intended to apply to apartments as they are understood according to their customary meaning; i.e., self contained living units with kitchen and bath facilities. General CT Page 8756 Assembly House Proceedings 1969, Vol. 13 Part 8, pp 3614-3620; 3669-3672. Equally notable is the absence of any reference to rooming houses in either the 1969 legislative debate when P.A. 462 was first enacted, or in any subsequent debates concerning amendments to the original CAO statute.
Thus while the legislative history is not precise and unequivocal, it strongly suggests that the legislature intended that only apartments would be subject to the CAO requirement. This is consistent with the practical necessities of such a law. § 47a-57
requires that an apartment be inspected for a CAO prior to each new tenant. The Hartford Municipal Code requires that a certificate be issued or denied within fifteen days of inspection. In the case of rooming houses, the occupants are often transient and the leases are frequently week to week. Were a CAO inspection required after each occupant vacated, an owner of a rooming house would have to keep each room vacant for almost three weeks between each tenancy. Under these circumstances, the legislature reasonably could have concluded that only apartments should be subject to CAO inspections. Likewise the legislature reasonably could have concluded that the health and safety of rooming house occupants was adequately safeguarded by periodic inspections according to municipal codes.
In the absence of any specific evidence to the contrary this court declines the invitation to engage in a construction of § 47a-57
"which fails to attain a rational and sensible result." Viscov. Cody, 16 Conn. App. 444 (1988).
For the foregoing reasons, the defendant's special defense is denied. Accordingly, judgment, shall enter for the plaintiff.
SO ORDERED.
Holzberg, J.